OPINION OF THE COURT
Daniel D. Angiolillo, J.
Defendant Desmond Williams moves for an order dismissing the instant indictment as to him on the ground that his rights to a speedy trial pursuant to CPL 30.20 and 30.30 have been violated.
The defendants are charged in a multi-count indictment with the forcible rape and forcible sodomy of a woman over a course of time on November 25, 1992 and November 26, 1992. Defendant Williams is charged with 10 separate counts of rape in the first degree and 9 separate counts of sodomy in the first degree. Of the rape counts, defendant Williams is charged in two counts with acting on his own; in two counts with aiding and abetting and acting with one of the codefendants, once as to each of the codefendants; and in six counts with aiding and abetting and acting with both codefendants. Of the sodomy counts, defendant Williams is charged in seven counts with aiding and abetting and acting with both codefendants and in the remaining two counts with aiding and abetting and acting with one of the codefendants, once as to each of the codefendants. All three defendants are additionally charged with one count of unlawful imprisonment in the second degree. A felony complaint was filed against defendant Williams on November 30, 1992. He was arrested on December 5, 1992 pursuant to an arrest warrant. The case was presented to the Grand Jury on December 10, 1992, defendant testified before the Grand Jury under a waiver of immunity, the indictment was returned against the defendants, defendant Williams was arraigned on December 28, 1992 and on that date, the People announced their readiness for trial.
Defendant Williams’ testimony before the Grand Jury was to the effect he met the complainant at her request and went to defendant Palmer’s apartment where they engaged in consensual sex. Defendant Williams’ testimony was that his two codefendants left the apartment before he had sex with the complainant, he did not see the codefendants again until the next morning when they were asleep in another room and that the complainant was only alone with the codefendants in the apartment for 7 to 10 minutes. Defendant Williams testified that no one else touched the complainant because they *215 weren’t there and that his contact with the victim was limited to two separate occasions of consensual sex.
The allegations in the indictment and the People’s bill of particulars present a totally different version of events on November 25 and 26, 1992. The People allege that force was used throughout and that on most of the occasions the complainant was being raped and sodomized simultaneously, with the defendants switching positions. On a number of the occasions, when the third defendant was not in direct physical contact with the complainant, he remained in the same room. A forensic scientist testified to obtaining positive acid phosphatase test results, a preliminary indicator of the presence of semen from the complainant’s panties, a sheet, a blanket, a sweat shirt, stockings and sweat pants. The preliminary examination showed positive test results on 17 stains, with a lot of the stains producing very strong reactions. At the time of the presentation of the evidence to the Grand Jury, the forensic analysis had not been completed.
Defendant Williams moved for omnibus relief in a motion returnable March 12, 1993. The codefendants moved for omnibus relief in motions returnable on March 19, 1993. The court determined those motions in decisions dated April 28 and 29, 1993. While the codefendants moved for severance, defendant Williams did not. The codefendants’ motions for severance were denied with leave to renew at the time of trial.
The People moved, on or about February 11, 1993, for orders requiring the defendants to permit the taking of blood and saliva samples. The People averred that they had evidence of numerous semen stains as to which they desired to conduct DNA analysis. All of the defendants submitted opposition to the motion. Defendant Williams opposed the motion as unnecessary, as he had testified before the Grand Jury to having engaged in sex with the complainant. The People countered that argument with the fact that defendant Williams is charged as both principal and accomplice, therefore it was necessary to ascertain whether the semen stains were from more than one individual and whether there was any intermingling of semen, again showing more than one actor.
In a decision and order entered April 27, 1993, this court (Scarpino, J.) granted the motion, requiring defendants to permit the taking of blood and saliva samples. The court ruled that the potential evidence was relevant to each codefendant’s principal and accessorial liability, in granting the motion as to *216 defendant Williams. The codefendants argued that given Williams’ admission of sex with the complainant, the People’s failure to initially establish that the semen came from more than one individual made for an insufficient showing of probable cause. The court ruled that the complainant’s identification of each of the codefendants as perpetrators of rape and sodomy provided probable cause to grant the motion as to them.
The Assistant District Attorney, a detective and counsel for the three defendants met at the Westchester County Jail on May 21, 1993 to obtain the blood and saliva samples. The People asserted in a subsequent affidavit that the date was chosen as mutually convenient. At that time blood and saliva samples were obtained from the defendant Williams. The codefendants refused to submit to the test.
The People moved on or about June 10, 1993, by order to show cause returnable June 18, 1993, for an order permitting the use of force, if necessary, to obtain blood and saliva samples from the codefendants. The affirmation of the Assistant District Attorney in support of the motion indicates that the physician present on May 21, 1993 to obtain the samples would not act without specific authorization to use necessary force. The codefendants opposed the motion with reiterations of their claims the People failed to establish the necessity for taking the samples. The affirmations in opposition are dated June 18 and June 24, 1993.
The court determined the motion to compel the production of the samples by necessary force in a decision and order dated and entered August 23, 1993. The People’s affirmation in opposition to the instant motion indicates the codefendants consented to the taking of samples on August 27, 1993, and the samples were obtained on September 1, 1993. Thereafter, the samples of all three defendants were submitted to the laboratory for DNA comparison. This case was adjourned at different times since September 1, 1993 awaiting the results of the DNA comparisons.
Defendant Williams served the instant motion by mail on December 24, 1993. The motion was fully submitted on or about January 19, 1994. At the time the motion was submitted, the People were not in receipt of the DNA test results. The People subsequently received oral notification of the test results showing matches as to defendant Williams and defendant Palmer, but no match as to defendant McNish.
*217 The defendant’s motion presents the request for relief in a combination of principles separately applicable to CPL 30.20 and 30.30. Those sections of the Criminal Procedure Law, while protecting similar interests, deal with different aspects of the interests in prompt adjudication of criminal charges and will be addressed separately.
CPL 30.20 is a statutory embodiment of the constitutional rights to a speedy trial and due process. The section provides that: "After a criminal action is commenced, the defendant is entitled to a speedy trial” (CPL 30.20 [1]). The right to a "speedy trial” is different from the People’s obligation to be ready for trial within six months of the commencement of the action. (CPL 30.30 [1] [a].) The determination of whether CPL 30.20 has been violated does not involve a strict counting of the passage of time, and the inclusion or exclusion of periods based on specific factors, as is the case with CPL 30.30.
The Court of Appeals set forth the factors to be considered in determining a claimed violation of the right to a speedy trial. "The following factors should be examined in balancing the merits of an assertion that there has been a denial of defendant’s rights to a speedy trial: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay.” (People v Taranovich, 37 NY2d 442, 445 [1975].)
There is no per se period beyond which a criminal action may not be pursued after a timely commencement within the applicable Statute of Limitations. Approximately 15 months have passed since the felony complaint was filed. During that time, the case was presented to the Grand Jury, with defendant exercising his rights to testify before that body; defendant moved for omnibus relief; defendant opposed the People’s motion for a blood and saliva order; the parties selected a collectively convenient date to draw the blood; the codefendants failed to comply with the initial order, requiring the People to move for an order explicitly setting forth that which was implicit in the initial order; shortly after the second withdrawal order was issued, the blood and saliva of the codefendants was obtained and sent to the laboratory for analysis; the remainder of the time has passed waiting for the results of a complex testing procedure.
Defendant is charged with numerous class B felonies. By *218 their nature, they are serious offenses. Given the allegations of multiple instances and joint and several involvements of the three defendants, only a murder could be more serious notwithstanding the classification of certain drug offenses as class A felonies. "Upon such a serious charge, the District Attorney may be expected to proceed with far more caution and deliberation than he would expend on a relatively minor offense.” (People v Taranovich, supra, at 446.) The allegation of multiple criminal actors together with the availability of the recently developed forensic tool of DNA analysis made it incumbent upon the People to seek to be as thorough and precise as possible in the preparation of the case.
Defendant has not been incarcerated the entire time this action has been pending. Defendant initially was released upon posting of cash bail. Defendant has been incarcerated for approximately the last 10 months. This factor weighs in defendant’s favor, but not significantly.
Defendant alleges that during the pendency of this case an investigator located and interviewed several witnesses, forged a relationship with the witnesses, and subsequently died; and defendant has been unable to reestablish contact with the witnesses since the death of the investigator. Defendant alleges this establishes prejudice. Defendant did not assert who these witnesses may be or what the nature of their prospective testimony would be, given defendant’s Grand Jury testimony that he spent all of the significant time in question alone with the complainant and the only other individuals present at any time were the codefendants. Defendant also did not assert how the investigator’s death precluded him from reestablishing contact with these witnesses. Defendant was promptly made aware of the nature of the charges against him. His testimony at the Grand Jury was two weeks after the alleged criminal conduct. As was the case with the prospective witnesses in Taranovich (supra), it seems highly improbable that the relevant witnesses in this case will fail to recall what transpired on the evening of November 25, 1992 through the morning of November 26, 1992.
The court has considered and weighed the factors in light of the circumstances of this case. Defendant’s constitutional and statutory rights to a speedy trial have not been violated. The motion to dismiss the indictment pursuant to CPL 30.20 is denied. (People v Taranovich, supra; see also, People v Rosado, 166 AD2d 544 [2d Dept 1990] [involving 2 Vi years of pretrial incarceration].)
*219 CPL 30.30 embodies different requirements. As defendant is charged with the commission of felonies, the People are required to be ready for trial within six months of the commencement of the action. The action commenced with the filing of the felony complaint on November 30, 1992. The People announced their readiness for trial on December 28, 1992. Defendant alleges that the People’s motion for a blood and saliva order as to him and the time that has elapsed since constitutes postreadiness delay that should be charged against the People for CPL 30.30 purposes. Defendant bases his claim on the assertion that as he admitted to having sex with the complainant, the only trial issue is the question of force and, therefore, the People should have brought him to trial notwithstanding the testing of the codefendants.
Defendant is mistaken in his assertion that the only trial issue as to him is the question of force. This is not a straightforward clash of claims of consent and force. As the People have asserted all along, defendant is charged not only as a principal but also as an accomplice. The involvement of the codefendants is directly relevant to his culpability. As the bill of particulars alleges, the People claim the involvement of defendant Palmer commenced with defendant’s invitation "don’t you want a piece of this” and defendant is alleged to have physically manipulated the complainant’s face to facilitate the initial act of sodomy involving defendant McNish. The presence of two or three individuals in the same room and the simultaneous involvement of two individuals in sexual acts against the complainant is clearly relevant to the question of force. The test results would also be relevant in resolving questions of credibility at the time of trial.
The time within which the People must be ready for trial under CPL 30.30 (1) is computed taking into account statutorily excludable periods of time pursuant to CPL 30.30 (4). The "ready for trial” requirements of CPL 30.30 include a statement of readiness for trial on the record when the People are in fact ready to proceed. (People v Kendzia, 64 NY2d 331 [1985].) The People announced their readiness for trial on the date defendant was arraigned, December 28, 1992. As the issues in this case involve applications by the People for continuances to obtain additional evidence, this court will look at the circumstances from both a prereadiness excludable period analysis, CPL 30.30 (4), and a postreadiness delay analysis, CPL 30.30 (3) (b).
*220 If the requests for continuances to obtain blood and saliva samples and submit them for analysis is viewed as unreadiness by the People, the period of time from December 28, 1992 to April 28, 1993 is clearly excludable pursuant to CPL 30.30 (4) (a). Those four months were consumed by defendant’s omnibus motion and the court’s determination of the motion. The period of time from April 28, 1993 to May 21, 1993 is also excludable. The defendant did not dispute the People’s assertion that the date of May 21, 1993 was one selected as collectively convenient to all counsel. As defendant consented to the lapse of that time period, it is not chargeable to the People.
Defendant Williams’ argument is that the time period from when the omnibus motions were decided should be charged against the People as DNA analysis was neither necessary nor appropriate regarding him. His argument that his acknowledgment of having had sexual relations with the complainant on the dates in question removed all issues but force from the case is without merit. In 8 of the 10 rape counts and all 9 sodomy counts, defendant is charged with aiding and abetting and acting with one or more of the codefendants. Proof of their involvement in sexual acts against the complainant is both relevant as to defendant’s liability as an accomplice and as to his liability as a principal on the question of force.
With multiple alleged actors and multiple semen stains, the People’s desire to match as many stains as possible to their sources was merely a cautious, deliberate approach to obtaining as much probative evidence as possible. Obtaining a blood and saliva sample from each of the defendants was necessary. (See, People v Fredericks, 157 Misc 2d 822 [Sup Ct, Bronx County 1993].)
Notwithstanding defendant Williams’ consent to giving the sample when faced with Judge Scarpino’s initial order, the failure of compliance by the codefendants resulted in further delay which is also chargeable to defendant Williams. As previously noted, it was necessary to obtain samples from all three defendants. Even if tests could have been run as to defendant Williams’ blood and saliva samples separately, with no loss of validity or increase in expense or difficulty, it still would have been necessary to await the test results on the blood and saliva of the codefendants. Defendant McNish and Palmer had no right to refuse to submit to the taking of the samples from them on May 21, 1993. The court granted the People’s motion for such samples. The Legislature specifically *221 envisioned such discovery. (CPL 240.40 [2] [v].) The codefendants’ refusal to comply with Judge Scarpino’s initial order compelled the People to seek the second order for explicit authorization to obtain the samples by force if necessary. CPL 240.70 (1) provides for sanctions against a party who has failed to comply with a discovery provision. Those sanctions include an order of compulsion and the granting of a continuance. A defendant who thwarts the discovery process and thereby causes delay may not then be heard to argue the delay should be charged to the People. (See, People v Etheridge, 116 Misc 2d 98 [Sup Ct, Bronx County 1982].) As the samples from all three defendants were necessary, the delay caused by one or more of them is chargeable to all three. (See, People v Barnett, 135 Misc 2d 1127 [Crim Ct, Kings County 1987].) To hold otherwise would allow defendants jointly charged in one indictment to manipulate the system to the benefit of one or more of them. (See, People v Fluellen, 160 AD2d 219 [1st Dept 1990].)
The period of time from May 21, 1993 to September 1, 1993 is chargeable to defendants and excludable from the time within which the People were required to be ready for trial. (CPL 30.30 [4] [g].) The time is also excludable pursuant to CPL 30.30 (4) (a). (See, People v Fluellen, supra; People v Wallace, 94 AD2d 708 [2d Dept 1983].) This court is counting the entire period as excludable, including the time from May 21, 1993 to June 10, 1993 when the People moved for the explicit-force order. It was the intransigence of the codefendants and their failure to comply with a valid discovery order which necessitated the People’s motion. Twenty days for submission of the order to show cause was not an unreasonable passage of time. The necessary continuance should be charged entirely against the defendants. (CPL 240.70.) The People moved expeditiously for relief. The majority of the time was consumed while the motion was sub judice.
The period of time during which the samples were being tested and the results obtained is also excludable time pursuant to CPL 30.30 (4). While some 4Vi months passed from the time all the samples were obtained to the making of the instant motion, there has been no showing that the time consumed by the completion of the tests was other than reasonable and necessary to obtain valid genetic test results. The time since defendant submitted the instant motion to dismiss is also excludable; it is excludable both as a continuation of the reasonable time to obtain the test results (CPL *222 30.30 [4] [g]), and as time during which a pretrial motion is made by the defendant and is under consideration (CPL 30.30 [4] [a]).
There is an additional basis for excluding the time subsequent to April 27, 1993 to date. Even if defendant’s arguments, that DNA testing was irrelevant as to him or after May 21, 1993, the People had samples of his blood and saliva and should have tested it then, were accepted, the time is excludable as to the codefendants and would be excludable to defendant as well. (CPL 30.30 [4] [d]; People v Robles, 139 AD2d 781 [2d Dept 1988], Iv denied 72 NY 865 [1988]; People v Vidal, 180 AD2d 447 [1st Dept 1992].) As previously noted, defendant did not move for a severance. (People v Robles, supra.)
If the period of time subsequent to May 21, 1993 is viewed as time when the People were not ready for trial, having previously been ready as of December 28, 1992, defendant’s motion may be denied if the unreadiness was due to exceptional facts or circumstances. (CPL 30.30 [3] [b].) "[W]ith respect to postreadiness delay it is the People’s delay alone that is to be considered, except where that delay directly 'results from’ action taken by the defendant within the meaning of subdivisions 4 (a), 4 (b), 4 (c) or 4 (e), or is occasioned by exceptional circumstances arising out of defendant’s action within the meaning of subdivision 4 (g)” (People v Anderson, 66 NY2d 529, 536 [1985]). In this case we are concerned with exceptional circumstances and subdivision (4) (g). As previously discussed, the necessity to obtain blood and saliva samples from all three defendants, the codefendants’ failure to comply with the initial discovery order and the complexity of the DNA test are just such exceptional circumstances. The People diligently sought to obtain the genetic evidence. "In a series of cases beginning with People ex rel. Franklin v Warden (31 NY2d 498), this court has considered the requirements of CPL 30.30 and has consistently construed it in light of its language and its legislative history, both of which conclusively demonstrate that this so called 'speedy trial’ statute was intended only to address delays occasioned by prosecutional inaction” (citations omitted). (People v McKenna, 76 NY2d 59, *223 63 [1990].) There has been no prosecutorial inaction in this case. Viewed as a postreadiness delay case, the motion to dismiss is properly denied pursuant to CPL 30.30 (3) (b).
Accordingly, the instant motion to dismiss the indictment pursuant to CPL 30.20 and 30.30 is denied.